UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF INDIANA and SAFECO INSURANCE COMPANY OF AMERICA,<br><br>                   Plaintiff,<br><br>v.<br><br>DARLENE CARLSON,<br><br>                   Defendant. | Case No.:<br><br><br>**COMPLAINT FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL** |

Plaintiffs Safeco Insurance Company of Indiana ("Safeco Indiana") and Safeco Insurance Company of America ("Safeco America"), for their Complaint against the above named Defendant, alleges as follows:

## NATURE OF ACTION

1. This action is brought pursuant to 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment regarding the parties' rights and obligations in connection with a Personal Automobile Policy ("Auto Policy") issued by Safeco Indiana and an Umbrella Policy issued by Safeco America to Defendant Darlene Carlson.

2. Carlson was injured in an accident that occurred when she was operating her golf car and swerved to avoid a collision with a golf cart operated by John Ziat. Safeco Indiana and Safeco America (collectively referred to herein as "Safeco") seek a declaration that Carlson is not entitled to Personal Injury Protection ("PIP") benefits, Underinsured Motorist ("UIM") benefits, or any other insurance coverage from Safeco in connection with this collision.

## PARTIES

3. Safeco Indiana is a citizen of Indiana and Massachusetts for purposes of determining diversity under 28 U.S.C. § 1332(c)(1). Safeco Indiana is a corporation organized under the laws of Indiana with a principal place of business in Boston, Massachusetts. Safeco Indiana has legally transacted insurance business in the State of Minnesota and within the geographical jurisdiction of the United States District Court for the District of Minnesota.

4. Safeco America is a citizen of New Hampshire and Massachusetts for purposes of determining diversity under 28 U.S.C. § 1332(c)(1). Safeco America is a corporation organized under the laws of New Hampshire with a principal place of business in Boston, Massachusetts. Safeco America has legally transacted insurance business in the State of Minnesota and within the geographical jurisdiction of the United States District Court for the District of Minnesota.

5. Carlson is an individual who resides in Stillwater, Minnesota.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Plaintiffs and Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interests.

7. This Court has personal jurisdiction over Carlson in this matter.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims at issue in this action occurred in this District.

9. An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties as to whether the Auto Policy and Umbrella Policy provide PIP benefits, UIM benefits, or other coverage to Carlson for injuries she suffered when operating her golf car.

## THE UNDERLYING ACCIDENT

10. Carlson owns a golf car that was purchased in Arizona in 2007. The golf car is operated exclusively in Arizona.

11. On October 31, 2014, Carlson was driving the golf car in the golf cart lane at the intersection of South Ridgeview Boulevard and South Spoon Drive in Saddlebrooke, Arizona.

12. The intersection of South Ridgeview Boulevard and South Spoon Drive in Saddlebrook, Arizona, is a non-public road in a private residential community.

13. Carlson alleges that a golf cart owned and operated by John Ziat turned in front of her, and that her subsequent evasive action caused her golf car to flip, resulting in significant injuries to Carlson ("the Accident"). (While there might be a technical distinction between a "golf car," which Carlson operated, and a "golf cart," which Ziat operated, any such distinction is not relevant to this action.)

14. Ziat's golf cart was insured under a Vehicle Insurance policy with Farmers Insurance. Carlson recovered the $100,000 "each person" liability limits available under the Farmers' Vehicle Insurance policy. Carlson also recovered the $300,000 "each occurrence" liability limits available under Ziat's Homeowners' Insurance policy with Farmers.

3

## THE INSURANCE POLICIES

### The Personal Auto Policy

15. At the time of the Accident, Carlson was a named insured under the Auto Policy issued by Safeco Indiana, Policy No. Z4175240, effective February 20, 2014, to February 20, 2015, which provided $300,000 single limit UM/UIM coverage. A true and correct copy of the Auto Policy is attached hereto as Exhibit A.

16. The Auto Policy was issued to Carlson at her Stillwater, Minnesota, residence. Carlson used a Minnesota insurance agent to apply for the Auto Policy in Minnesota.

17. The Auto Policy insures four vehicles, a 2015 Subaru, 2005 Lexus, 2007 Hyundai, and 2014 Subaru. Each of these four vehicles is specifically listed as an insured vehicle in the Auto Policy. Carlson specifically requested insurance coverage with respect to each of these four vehicles.

18. Carlson's golf car is not listed as an insured vehicle on the Auto Policy, and the Auto Policy does not otherwise identify or refer to the golf car. Carlson did not request that Safeco provide insurance coverage for the golf car and at no time informed Safeco of the purchase or ownership of the golf car.

19. The Auto Policy provides, in relevant part:

**PERSONAL INJURY PROTECTION COVERAGE**

**INSURING AGREEMENT**

A. We will pay, in accordance with the Minnesota No-Fault Automobile Insurance Act, personal injury protection benefits to or

for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by:

1. An accident arising out of the maintenance or use of a **motor vehicle** as a vehicle; or

\* \* \*

**DEFINITIONS**

As used in this coverage:
\* \* \*

"**Motor vehicle**" means every vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which is:

1. Required to be registered pursuant to Minnesota Statutes, Chapter 168;

2. Designed to be self-propelled by an engine or motor for use primarily upon:
   a. Public roads;
   b. Highways; or
   c. Streets

\* \* \*

### PART C – UNINSURED/UNDERINSURED MOTORIST COVERAGE INSURING AGREEMENT

A. We will pay damages from which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** because of bodily injury:

1. Sustained by that **insured**; and
2. Caused by an accident.

\* \* \*

C. "**Underinsured motor vehicle**" means a land motor vehicle or **trailer** of any type to which a bodily injury liability bond or policy applies at the time of the accident in limits equal to or greater than the minimum limits specified by the Minnesota No-Fault Automobile Insurance Act but its limit for bodily injury liability is not enough to pay the full amount the insured is legally entitled to recover as damage.

However, "**underinsured motor vehicle**" does not include any vehicle or equipment:

5

* * *

5. Designed mainly for use off public roads while not upon public roads.

* * *

**EXCLUSIONS**

A. We do not provide Uninsured/Underinsured Motorists Coverage for **bodily injury** sustained by any **insured**:

1. While **occupying** any **motor vehicle** owned by that **insured** which is not insured for this coverage. This includes a **trailer** of any type used with that vehicle.

### The Umbrella Policy

20. At the time of the Accident, Carlson was a named insured under the Umbrella Policy issued by Safeco America, Policy No. UZ4385530, effective May 20, 2014, to May 20, 2015. The Umbrella Policy does not provide PIP coverage or UM/UIM coverage. A true and correct copy of the Umbrella Policy is attached hereto as Exhibit B.

21. The Umbrella Policy was issued to Carlson at her Stillwater, Minnesota, residence. Carlson used a Minnesota insurance agent to apply for the Umbrella Policy in Minnesota.

22. The Umbrella Policy provides, in relevant part:

**EXCLUSIONS**

This policy does not apply to any:

* * *

**5. bodily injury, personal injury** or **property damage:**

 **a.** Arising out of the ownership, maintenance, use, operation, loading or unloading of:

* * *

  **(5)** any **recreational vehicle.**

  **Recreational vehicle** means a motorized:

6

                                  \* \* \*

          **(c)**      golf cart;

                          \* \* \*

          **(e)**      any other **vehicle** designed for recreational use off public roads other than described in **5.a.(2).** above.

                          \* \* \*

**7.**      amounts payable under any:

      **a.**      automobile no-fault or any similar coverage; or

      **b.**      Uninsured Motorists or Underinsured Motorists coverage or any similar coverage, unless this policy is endorsed to provide such coverage as shown in the Declarations.

### CARLSON'S CLAIM FOR INSURANCE COVERAGE FROM SAFECO

23. Carlson claims she is entitled to PIP benefits in the amount of $25,000 under her Auto Policy.

24. Carlson claims she is entitled to UIM benefits in the amount of $300,000 under her Auto Policy.

25. Carlson never disclosed to Safeco that she had purchased or owned a golf car.

26. Carlson never applied for coverage from Safeco for her golf car.

27. Safeco does not insure golf cars under a Personal Auto Policy.

28. If Carlson had requested coverage from Safeco for her golf car, Safeco Indiana would not have added the golf car to the Auto Policy. Instead, Safeco, if it agreed to provide coverage, would have issued a separate motorcycle policy that would have been issued in Arizona and covered the golf car in Arizona. A premium would have been charged for that motorcycle policy.

29. If Carlson had purchased a motorcycle policy from Safeco, Carlson could have made the choice as to whether she wanted UIM coverage, and if she had purchased UIM coverage she would have paid an additional premium.

## COUNT I – DECLARATION OF RIGHTS
### (PIP coverage not available under the Auto Policy)

30. Safeco Indiana re-alleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

31. The Minnesota No-Fault Act requires that "[b]asic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle." Minn. Stat. § 65B.44, subd. 1.

32. The Auto Policy provides PIP coverage for bodily injury caused by "[a]n accident arising out of the maintenance or use of a motor vehicle as a vehicle."

33. The No-Fault Act defines a "motor vehicle" as "every vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which (a) is required to be registered pursuant to chapter 168, and (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property …." Minn. Stat. § 65B.43, subd. 2. The definition of "motor vehicle" in the Auto Policy includes the same requirements.

34. Neither Carlson's golf car nor Ziat's golf cart is a "motor vehicle," because neither is required to be registered under Chapter 168 of the No-Fault Act.

35. Neither Carlson's golf car nor Ziat's golf cart is a "motor vehicles," because neither is designed "for use primarily upon public roads, highways or streets."

8

36. Safeco Indiana seeks and is entitled to a declaration that the Auto Policy does not provide PIP coverage to Carlson for the Accident.

## COUNT II – DECLARATION OF RIGHTS
### (No UIM coverage under the Auto Policy)

37. Safeco Indiana re-alleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

38. Under Minnesota's No-Fault Act, "underinsured motor vehicle" is defined, in part, to mean "a motor vehicle …." Minn. Stat. § 65B.43, subd. 17. The definition of "underinsured motor vehicle" in the Auto Policy similarly is defined, in part, as a "land motor vehicle," and specifically does not include any vehicle "[d]esigned mainly for use off public roads while not upon public roads."

39. The No-Fault Act defines a "motor vehicle" as "every vehicle, other than a motorcycle or other vehicle with fewer than four wheels, which (a) is required to be registered pursuant to chapter 168, and (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways or streets in the transportation of persons or property …." Minn. Stat. § 65B.43, subd. 2.

40. The term "motor vehicle" in the Auto Policy is similarly defined as a vehicle required to be registered pursuant to Minnesota Statute Chapter 168 and is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways, or streets.

41. Ziat's golf cart is not a "motor vehicle," because a golf cart is not required to be registered under Chapter 168 of the No-Fault Act.

9

42. Ziat's golf cart is not a "motor vehicle," because the golf cart is not designed for use primarily upon public roads, highways or streets.

43. Safeco Indiana is entitled to a declaration that the Auto Policy does not provide UIM coverage to Carlson for the Accident, because Ziat's golf cart is not a "motor vehicle" or "land motor vehicle," and thus is not an "underinsured motor vehicle."

44. Safeco Indiana is entitled to a declaration that the Auto Policy does not provide UIM coverage to Carlson for the Accident, because Ziat's golf cart was not designed mainly for use upon public roads, and Ziat's golf cart was not being used on public roads at the time of the Accident.

45. Carlson alleges that Ziat's golf cart is a "motor vehicle."

46. Safeco Indiana specifically denies that Ziat's golf cart is a "motor vehicle," and further states that even if Ziat's golf cart is a "motor vehicle" within the meaning of the Auto Policy, UIM coverage does not apply.

47. Exclusion A.1 of the Auto Policy excludes UIM coverage for bodily injury sustained by any insured "[w]hile occupying any motor vehicle owned by that insured which is not insured for this coverage."

48. Carlson owned the golf car she was occupying at the time of the Accident.

49. Carlson's golf car was not insured at the time of the Accident.

50. If Ziat's golf cart is a "motor vehicle," then Exclusion A.1 applies to exclude UIM coverage to Carlson, because she owned the golf car she was occupying at the time of the Accident, and did not insured the golf car under the Auto Policy.

51. Safeco Indiana seeks and is entitled to a declaration that Carlson is not entitled to UIM coverage under the Auto Policy for any injuries she suffered arising out of the Accident.

### COUNT III – DECLARATION OF RIGHTS
### (No PIP or UIM Coverage under the Umbrella Policy)

52. Safeco America re-alleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

53. The Umbrella Policy does not provide PIP coverage.

54. The Umbrella Policy does not provide UIM coverage.

55. Exclusion 5.a.(5) of the Umbrella Policy excludes coverage for bodily injury arising out of the ownership, maintenance, use, operation, loading, or unloading of any "recreational vehicle."

56. Both Ziat's golf cart, and Carlson's golf car, fall within the definition of a "recreational vehicle," and Carlson's injuries allegedly arose out of the ownership, use, or operation of the golf cart and golf car.

57. Exclusion 5.a.(5) of the Umbrella Policy applies to exclude coverage under the Umbrella Policy for all of Carlson's injuries arising out of the Accident.

58. Exclusion 7.a of the Umbrella Policy excludes coverage for any amounts payable under "automobile no-fault or any similar coverage."

59. Exclusion 7.b of the Umbrella Policy excludes coverage for any amounts payable under any "Uninsured Motorists or Underinsured Motorists coverage or any similar coverage, unless this policy is endorsed to provide such coverage as shown in the

Declarations." The Umbrella Policy does not contain an endorsement providing "Uninsured Motorist or Underinsured Motorist coverage or any similar coverage."

60. Exclusions 7.a and 7.b of the Umbrella Policy apply to preclude coverage under the Umbrella Policy for all of Carlson's injuries arising out of the Accident.

61. Safeco America seeks and is entitled to a declaration that the Umbrella Policy does not provide any coverage for Carlson's claim of PIP and UIM benefits.

## **PRAYER FOR RELIEF**

WHEREFORE, Safeco prays for judgment as follows:

1. On Count I of this Complaint, a judicial determination that the Auto Policy does not provide PIP coverage to Carlson for any injuries arising out of the Accident.

2. On Count II of this Complaint, a judicial determination that the Auto Policy does not provide UIM coverage to Carlson for any injuries arising out of the Accident.

3. On Count III of this Complaint, a judicial determination that the Umbrella Policy does not provide PIP coverage or UIM coverage to Carlson for any injuries arising out of the Accident.

4. Such other and further relief as the Court deems just, necessary, and proper.

## **DEMAND FOR JURY TRIAL**

Safeco hereby demands a trial by jury by the maximum number of jurors allowed by law, on the issues herein.

DATE:  February 24, 2017    s/Christian A. Preus
Christian A. Preus (#173617)
Beth A. Jenson Prouty (#389275)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone:   (612) 333-3000
Facsimile:    (612) 333-8829
cpreus@bassford.com
bprouty@bassford.com

**Attorneys for Plaintiffs Safeco Insurance Company of Indiana and Safeco Insurance Company of America**

13